**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**GLORIA J. CARTER**                                                                                     **PLAINTIFF**

**V.**                                                        **CIVIL ACTION NO. 2:20-cv-00033-KS-MTP**

**TOTAL FOOT CARE and
DR. MICHAEL ZALESKI**                                                       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on the Motion to Dismiss [30][1] filed by Defendants, Total Foot Care and Dr. Michael Zaleski. The motion is fully briefed and ripe for resolution. Having reviewed the parties' submissions and the relevant legal authorities, and otherwise being duly advised in the premises, the Court finds it has no subject matter jurisdiction and the motion will be granted.

**I. BACKGROUND**

This case arises from the amputation of Plaintiff's toe during a visit to Total Foot Care in February of 2019. [3] at p. 4, ¶ 1. Plaintiff alleges that she was forced and coerced to agree to the surgery that day. *Id*. She alleges that her health has since declined and a multitude of other allegations surrounding the removal and disposal of her toe, such as a lack of pain medication or antibiotics and that Dr. Zaleski simply threw her body part in the trash. *Id*. at ¶¶ 2-6. Plaintiff had originally sued the Mississippi Board of Medical Licensure, alleging that had the Board not reinstated Defendant's license, Plaintiff would not have suffered as she has. *Id*.

The Court dismissed the Mississippi Board of Medical Licensure for lack of subject matter jurisdiction, and the parties stipulated to the dismissal of the individual defendants

---

[1] Defendants also incorporated a request to stay discovery, which is now moot. Such request would have been addressed sooner had it been included in a separate motion as the Local Rules require.

associated with the Board. [16], [23]. The Defendants remaining are Dr. Michael Zaleski and Total Foot Care, both of whom now move to dismiss for lack of subject matter jurisdiction.

In the First Amended Complaint, Plaintiff claims that jurisdiction lies under the First and Fourteenth Amendments and that the court has supplemental jurisdiction over the state law claims. [3] at pp. 2-3.[2] Plaintiff then asserts the following causes of action: Count One-Violation of the First Amendment; Count Two-Violation of Title VII and the Fourteenth Amendment; Count Three-State Law Claims; and Count Four-Intentional Infliction of Emotional Distress. These causes of action will be addressed below.[3]

## II. DISCUSSION

### A. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). This Court's subject matter jurisdiction arises under either a federal question or diversity jurisdiction. Federal question jurisdiction exists with respect to "all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. Diversity jurisdiction exists in all civil actions where the matter in controversy exceeds the sum or value of $75,000, and is between: (1)

---

[2] Plaintiff also alleges in the second paragraph on the first page that she brings her suit against all Defendants for the following claims: "TITLE VII right, fourth Amendment U.S. Constitutional right, United States 14th Constitutional Amendment, 42 U.S.C. § 1983, and 1981, Negligence, Negligence Per Se, Negligent Supervising, Hippa [sic] Violations."

[3] These are the only enumerated causes of action despite the claims mentioned in the prior footnote. Notwithstanding, as regards federal question jurisdiction, there is no private right of action under HIPAA or any of its regulations. *See Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006).

citizens of different States; or (2) citizens of a State and citizens of a foreign state. *See* 28 U.S.C. § 1332(a). Absent any federal question, complete diversity of citizenship is required. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The party asserting jurisdiction bears the burden of establishing it when the court's subject matter jurisdiction is challenged. *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995).

### B. Analysis

Defendants argue that lack of subject matter jurisdiction and Plaintiff's failure to state a claim warrant dismissal of this action. No one can dispute that diversity jurisdiction does not exist because Plaintiff and Defendants are all residents of Mississippi. As such, we must look to federal question jurisdiction. It is "well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999); *Burton v. Southwood Door Co.*, 305 F. Supp. 2d 629, 632 (S.D. Miss. 2003) ("The determination whether a plaintiff's claim arises under federal law is made by examining the 'well pleaded' allegations of the complaint."). Determining whether federal question jurisdiction exists will necessarily take into consideration whether Plaintiff has stated a claim in her pleadings.

To survive dismissal, Plaintiff's Amended Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (internal quotation marks, citation, and

alteration omitted). However, the Court is not obligated to accept threadbare recitals of the elements of the cause of action, and legal conclusions must be supported by factual allegations. *Iqbal*, 556 U.S. at 678-79. Although Plaintiff makes generic jurisdictional statements in the First Amended Complaint, to determine if the Defendants are entitled to dismissal, the Court must look to the actual allegations pled in both the statement of facts and the various counts.

### 1. Constitutional Violations

Plaintiff alleges violations of the First and Fourteenth Amendments in Counts One and Two. Defendants argue that Plaintiff cannot state a claim for any constitutional violations because only governmental actors can be liable for constitutional violations—not private citizens. Plaintiff responds, in part:

> As such, Plaintiff avers that although sometimes plausibly inferred in litigants arguments before Federal District Courts that a parties First amendment right might only be applicable to a state actor, the amendment makes no such ruling. Plaintiff contend that if congress intended for a citizen of the United States to only be able to use the 1st Amended as it relates to government wrong doers then it would have been logical that congress would have stated the same.
>
> \*\*\*
>
> Plaintiff turns on the fact that Congress in writing the U.S. Constitution, First Amendment, could have specifically held that no party may bring an action regarding his 1st amended right unless the wrong doer is the government, but no such language is found. It appears to Plaintiff that most logic minds have over many years simply inferred such a theory and perhaps that was because most legal minds infer that the U.S. Constitution is only implacable against a government worker.

[34] at p. 2, 4 ([*sic*] all in original).

Let us begin with a refresher on basic constitutional law. The first ten amendments to the United States Constitution is known as the Bill of Rights. "[T]he Bill of Rights, when adopted, was for the protection of the individual against the federal government and its provisions were inapplicable to similar actions done by the states." *Adamson v. People of State of California*, 332

U.S. 46, 51 (1947).[4] Other than a few exceptions for federal actors or agents, there is typically no direct action under the Constitution. *See Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) (noting that *Davis v. Passman*, 442 U.S. 228 (1979) and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 (1971) were notable exceptions); *see also Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993) (noting that *Bivens* provides for a direct action under the Constitution).

"The Fourteenth Amendment denies the *States* the power to 'deprive any person of life, liberty, or property, without due process of law.'" *Duncan v. State of La.*, 391 U.S. 145, 147 (1968) (emphasis added). It is through the Due Process Clause of the Fourteenth Amendment that many of the rights contained in prior amendments to the Constitution have been held to also be protected against state action. *Id*. at 148. Thus, "most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750, 130 S. Ct. 3020, 3025, 177 L. Ed. 2d 894 (2010); *see also Duncan,* 391 U.S. at 148 (citing numerous rights that have been made applicable to the States through the Fourteenth Amendment); Suja A. Thomas, *Nonincorporation: The Bill of Rights After* McDonald v. Chicago, 88 Notre Dame L. Rev. 159 (2012) (discussing certain rights that have not been incorporated against the States).

"Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Also, unlike federal actors, if the victim of a constitutional violation by a state

---

[4] The very language of the "First Amendment to the United States Constitution provides in part that 'Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances.'" *We the People Found., Inc. v. United States*, 485 F.3d 140, 141 (D.C. Cir. 2007). Thus, it is axiomatic that it is "Congress," i.e., the government, that is restricted in its actions, not private citizens.

actor wants to seek a remedy, he or she may not sue directly under the Constitution, but must pursue such claims under 42 U.S.C. § 1983. *Neyland v. Henley-Young Juvenile Justice Ctr.*, No. 3:09CV520, 2011 WL 1980276, at *3 (S.D. Miss. May 20, 2011). To state a viable claim under Section 1983, the person depriving the plaintiff of a constitutional right must have acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id*. at 49.

Based on the foregoing, it is quite clear, and contrary to Plaintiff's unfounded assertions, that yes, only government actors, either state or federal, may be held liable for constitutional violations. Here, Plaintiff simply cannot state a claim under Section 1983, or otherwise, because Dr. Zaleski and Total Foot Care were neither federal actors nor acting under color of state law. It is not pled, and it is not plausible. This case arises from an allegedly improper removal of a toe, which has nothing to do with government action and constitutional rights.[5]

Notwithstanding, in response to the motion, Plaintiff claims that she has stated a proper claim for a violation of her First Amendment right to petition the government for redress of grievances. Despite the lack of a governmental actor, nowhere in the First Amended Complaint is there any fact to support a claim against these Defendants for such a violation.[6] Plaintiff also makes an argument that if Plaintiff is not able to pursue her claims in this Court, *this Court* will

---

[5] Plaintiff cites to *Christopher v. Harbury*, 536 U.S. 403 (2002), which, as Defendants point out in their Reply, is wholly inapplicable because that case involves a governmental official, particularly it involved a *Bivens* action against an agent of the Central Intelligence Agency of the federal government. [42] at p. 2.

[6] In the Count One the allegation is that the "MS State Board of Medical Licensure, are [*sic*] liable to Plaintiff for violating Plaintiff's right to ask the government at any level to right a wrong or correct a problem." [3] at p. 7. The only reference to these Defendants is when Plaintiff states that "the actions of all Defendants, including Dr. Zalaski [*sic*] by and through Total Foot Care, were negligent, willful and showed a reckless disregard for the health of Plaintiff . . . ." *Id*.

be violating Plaintiff's First Amendment right. Plaintiff then goes so far as to assert that if this Court dismisses Plaintiff's claims, she will have to bring a separate action against "the court itself" for violating her rights. [34] at p. 5-6. The sole issue is subject matter jurisdiction. It either exists, or it does not. Any dismissal is not a violation of a constitutional right, but a function of the restriction on the powers vested in this Court to adjudicate a case.

### 2. Title VII and Section 1981

Plaintiff mentions Title VII in the opening paragraphs of her First Amended Complaint as well as in Count Two. In short, for a plaintiff to bring an action under Title VII, the plaintiff must have an employment relationship with the defendant. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) ("Title VII is available only against an employer."). There are simply no allegations that there is or ever was any employer/employee relationship between the Plaintiff and Dr. Zaleski or Total Foot Care. Additionally, the allegations in Count Two are all directed at the MS State Board of Medical Licensure. This is clearly not an employment discrimination case, and as such, there is no cause of action under Title VII.

Like Title VII, Plaintiff also makes passing reference to Section 1981 in the opening paragraphs of her First Amended Complaint. Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989), superseded by statute on other grounds. Here, there are no allegations of these Defendants' interference with the Plaintiff's ability to make or enforce any contract due to her race. Thus, Plaintiff fails to state a Section 1981 claim.

### 3. Supplemental jurisdiction

With no federal claims pending against these Defendants, the Court now turns to Plaintiff's only other argument, which is to urge the exercise of supplemental jurisdiction. The

federal statute that provides for supplemental jurisdiction states, in relevant part:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c). The use of the word "may" indicates a court's discretion. In this case, it is the third factor that is applicable and weighs heavily in favor of dismissal of these claims, and the Court finds in its discretion that dismissal is warranted.

In support of her argument, Plaintiff relies on *Parker & Parsley Petroleum Co. v. Dresser Industries*,[7] in which the Fifth Circuit held that the district court abused its discretion when it retained jurisdiction over state law claims after it had dismissed federal RICO claims. 972 F.2d 580, 590 (5th Cir. 1992). The court noted that the Fifth Circuit's general rule is to dismiss the state claims once the federal claims are dismissed. *Id*. at 585. Notwithstanding, the court considered the factors from Section 1367, as well as judicial economy, convenience, fairness, and comity to decide whether to exercise supplemental jurisdiction. *Id*. at 586 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

In this case, neither party has earnestly engaged in any analysis of these factors. However, the Court has considered them and finds, as the Fifth Circuit did, that "this matter justifie[s] no departure from the usual rule that dismissal is required." *Id*. at 587. First, the issue of judicial economy weighs in favor of dismissal because this case is in its infancy. The case has not reached a stage that anything would need to be "re-done," and the record reveals very little

discovery has been conducted. *See Parker & Parsley*, 972 F2d at 585 (noting that the *Carnegie-Mellon* court stated "that when the single federal-law claim is eliminated at an "early stage" of the litigation, the district court has 'a powerful reason to choose not to continue to exercise jurisdiction'"). Second, as to convenience, all parties are located here in Forrest County, Mississippi such that it is just as convenient to litigate in state court as in federal.

As for fairness, the Fifth Circuit stated that the "fairness factor concerns the prejudice to the parties that would arise from dismissal." *Parker & Parsley*, 972 F.2d at 588. Plaintiff argues briefly that if her claims her are dismissed, she will be forced to litigate in state court where the Defendants will have an advantage over her. [34] at p. 5. Plaintiff cites no case law that supports the notion that this is the type of "fairness" consideration the Fifth Circuit contemplated. Conjecture about a "hometown" advantage for the Defendants is not prejudice. Moreover, a plaintiff cannot be "rewarded" for bringing an unfounded federal claim to get into federal court and then hope to stay there once the federal claim is dismissed because he or she simply does not want to be in state court. Plaintiff cites to no hardship or true prejudice in having to bring her claims in state court.

Finally, as to federalism and comity, dismissal would serve these important interests. As the court explained in *Parker & Parsley*, federal courts are courts of limited jurisdiction and are not "well equipped for determinations of state law as are state courts." 972 F.2d at 589. While the issues of state law in this case may not be particularly complex, regardless, "there is no mechanism by which [a federal court's] errors in [state law] matters can be corrected on appeal by state courts." *Id*. There is simply no reason to exercise jurisdiction in this case with the factors of judicial economy, convenience, fairness, and comity pointing strongly toward dismissal.

---

[7] *See* [33] at p. 2.

## III. CONCLUSION

Based on the foregoing, the Court finds that there is no subject matter jurisdiction in this case, as there is no diversity jurisdiction and Plaintiff has failed to state a claim encompassing federal question jurisdiction. Therefore, it is hereby ORDERED that the Motion to Dismiss [30] filed by Defendants, Total Foot Care and Dr. Michael Zaleski, is GRANTED, and the request for a stay of discovery is denied as moot. Plaintiff's Motion for Judgment on the Pleadings [35] is also denied as moot. This case is now closed.

SO ORDERED AND ADJUDGED this 13th day of October 2020.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE